**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ZUNIR WILSON WALKER** | : | **CIVIL ACTION** |
| | : | |
| v. | : | **NO. 24-2773** |
| | : | |
| **SGT. WILLIAMS, C/O PARIS, JOHN** | : | |
| **DOE, and JANE DOE** | : | |

# MEMORANDUM

**KEARNEY, J.**                                                                                                    **December 10, 2024**

The incarcerated Zunir Wilson-Walker pro se claims correctional officers violated his Eighth and Fourteenth Amendment rights through excessive force and sexual assault during their alleged disciplinary acts responsive to him using a cell phone to call his stepmother on April 30, 2024. The correctional officers now move to dismiss his amended Complaint arguing their disciplinary acts do not rise to the level of excessive force or sexual assault. We agree in part as to a lieutenant on excessive force and as to a claim of sexual assault by a correctional officer. We dismiss the named lieutenant absent allegations he applied or directed force more than directing other officers disrobe Mr. Wilson-Walker after he threatened self-harm. We also dismiss the sexual assault claim without prejudice as we have no present basis to find one alleged penis-grab during the disciplinary acts had a sexual overlay. Mr. Wilson-Walker may proceed on his remaining excessive force claims.

I.  **Pro se alleged facts**

The Commonwealth detained Zunir Wilson-Walker in the George W. Hill Correctional Facility in April 2024.

*Correctional officers' alleged conduct on April 30, 2024.*

Zunir Wilson-Walker called his stepmother on April 30, 2024 with approval but Sergeant Williams yelled at him for making the call and told him "you [are] going to the hole!"[1] Mr. Wilson-Walker asked Sergeant Williams why he would be sent "to the hole."[2] Sergeant Williams became aggressive and twisted Mr. Wilson-Walker's hands and arms behind his back.[3] Mr. Wilson-Walker did not resist.[4]

Correctional Officer Paris and a John Doe correctional officer arrived on the unit to assist Sergeant Williams.[5] The two correctional officers and Sergeant Williams "began to grip [Mr. Wilson-Walker] up and try to move [him] to another room" and Correctional Officer Paris "proceeded to touch [Mr. Wilson-Walker's] rear end trying to push [him] into this other room."[6] Mr. Wilson-Walker told the prison officials he felt "uncomfortable" with the way they touched him.[7] Correctional Officer Paris then "grabbed [Mr. Wilson-Walker's] penis and squeezed it in a sexual manner," picked Mr. Wilson-Walker up by his underwear and pants with the help of Correctional Officer John Doe and "half carried, half walked" Mr. Wilson-Walker "forcefully to medical."[8] Sergeant Williams continued to twist Mr. Wilson-Walker's arms behind his back with "way too much force."[9]

Correctional Officers Paris and John Doe "lick[ed] their lips and laugh[ed] at" Mr. Wilson-Walker while nurses in the Facility's medical unit examined Mr. Wilson-Walker.[10] Correctional Officer Jane Doe arrived with a camera for an unidentified purpose.[11] Mr. Wilson-Walker

screamed Correctional Officers Paris and Doe sexually assaulted and harassed him but everyone "ignored" and "laughed" at him.[12]

Correctional Officers Paris and Doe and Sergeant Williams carried Mr. Wilson-Walker from the medical unit into a hallway where a second Jane Doe correctional officer elbowed Mr. Wilson-Walker in the face.[13] Mr. Wilson-Walker screamed he did not feel safe and "hated [his] life" and told Sergeant Williams he wanted to kill himself.[14] Correctional Officers Paris and John Doe responded by taking Mr. Wilson-Walker to "intake" and the "shower room" where they "slammed" him on the floor unnecessarily.[15] Sergeant Williams and Lieutenant Moody ordered Correctional Officer Paris and three other John Doe correctional officers to "snatch [Mr. Wilson-Walker's] clothes off" and they "forcefully … disrobed" him with Correctional Officer Paris "apply[ing] more pressure to [Mr. Wilson-Walker's] anal area."[16] Correctional Officer John Doe then put a knee on Mr. Wilson-Walker's neck preventing him from breathing, officers put him in a "turtle suit," and put him in a room with no bed, socks, "or anything."[17]

### *Mr. Wilson-Walker complains about the April 30, 2024 conduct.*

Mr. Wilson-Walker told Lieutenant Moody he wanted to file a PREA complaint but Lieutenant Moody denied his request.[18] Mr. Wilson-Walker suffers from mental health issues, trauma, "harsh feedback from staff members in the prison," nightmares, and is "having a hard time functioning getting through [his] everyday life" since the April 30, 2024 incident.[19]

Mr. Wilson-Walker sued Sergeant Williams, Correctional Officer Paris, Lieutenant Moody, and John and Jane Doe correctional officers under 42 U.S.C. § 1983 for violating his civil rights on April 30, 2024 in two ways: (1) each Defendant used excessive; and (2) Correctional Officer Paris, Lieutenant Moody, and a John Doe correctional officer sexually abused and harassed him.[20] We dismissed his complaint consistent with our section 1915 screening obligations on July

17, 2024 for failing to identify a state actor with leave to timely amend.[21] Mr. Wilson-Walker timely amended to identify the state actors allegedly abusing him on April 30, 2024 and now seeks $500,000 in damages for pain and mental health trauma.[22]

## II. Analysis

The state actors move to dismiss Mr. Wilson-Walker's amended excessive force and sexual assault claims arguing his pro se alleged conduct does not rise to the level of a constitutional violation.[23] We agree with the correctional officers as to the single sexual assault claim involving Correctional Officer Paris. But we find Mr. Wilson-Walker adequately pleads specific instances of excessive force mindful he must allege a person acting under color of state law committed the complained-of conduct and the conduct deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States.[24]

### A. Mr. Wilson-Walker plausibly pleads excessive force.

Mr. Wilson-Walker alleges each of the correctional officers used excessive force on April 30, 2024. The Eighth Amendment prohibits the correctional officers from unnecessarily and wantonly inflicting pain within the "evolving standards of decency that mark the progress of a maturing society."[25] The Supreme Court instructs "the core judicial inquiry is … whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."[26] This is because "[f]orce that is used 'maliciously and sadistically for the very purpose of causing harm' violates the Eighth Amendment."[27] Not every "malevolent touch by a prison guard gives rise to a federal cause of action" but "'[a]pplication of force by ... prison guards exceeding that which is reasonable and necessary under the circumstances' may be actionable."[28]

We apply several factors to determine whether a correctional officer used excessive force: "(1) 'the need for the application of force'; (2) 'the relationship between the need and the amount

of force that was used'; (3) 'the extent of injury inflicted'; (4) 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them'; and (5) 'any efforts made to temper the severity of a forceful response.'"[29]

Mr. Wilson-Walker must allege sufficient facts from which we could infer the named correctional officers used excessive force to plausibly state an Eighth Amendment excessive force claim.[30] The correctional officers argue Mr. Wilson-Walker admits he failed to cooperate with them by not getting off the phone as directed by Sergeant Williams followed by Mr. Wilson-Walker announced desire to kill himself resulting in the struggle to place him in a suicide prevention vest and placed on suicide watch. The correctional officers further argue Mr. Wilson-Walker's "lack of cooperation justifies the use of force" and the force used is "consistent with" and "need for" restraint of an "uncooperative inmate during a strip search" and he does not plead injury aside from psychological harm.[31]

We disagree with correctional officers' overbroad reach at this early stage of the case. Our Court of Appeals instructs an Eighth Amendment analysis "must be driven by the extent of the force and the circumstances in which it is applied; not by the resulting injuries."[32] Our Court of Appeals rejected a requirement of "objective or independent proof of minor or significant injury" because such a requirement "would ignore [its] teaching and place protection from injury, instead of protection from wanton force, at the hub of the Eighth Amendment."[33] So we do not agree Mr. Wilson-Walker's failure to plead physical injury results in dismissal of his claim at this stage. But we are also aware the Eighth Amendment does not protect Mr. Wilson-Walker from an objectively de minimis use of force.[34]

Mr. Wilson-Walker pro se alleges Sergeant Williams twisted his hands and arms behind his back unnecessarily because Mr. Wilson-Walker "was not resisting" and, later in the incident,

"using way too much force"; a Jane Doe Correctional Officer "snuck up and elbowed" him in the face; Correctional Officers Paris and John Doe "slammed" him on the floor after he announced his intent to kill himself; and John Doe Correctional Officer put his knee on Mr. Wilson-Walker's neck and Mr. Wilson-Walker "couldn't breathe."[35]

We today must accept as true the alleged facts and draw all reasonable inferences in Mr. Wilson-Walker's favor to determine whether he alleges facts sufficient to state a plausible Eighth Amendment excessive force claim. Mr. Wilson-Walker's allegations Sergeant Williams unnecessarily twisted his hands and arms behind the back without need to overcome resistance, Jane Doe Correctional Officer elbowed him in the face, Correctional Officers Paris and John Doe's slamming him to the floor, and a John Doe Correctional Officer putting his knee on Mr. Wilson-Walker's neck obstructing his breathing "nudges" his claim of excessive force "across the line from conceivable to plausible."[36] We allow the parties to develop a factual record which may show the correctional officers used force "in a good-faith effort to maintain or restore discipline" and not "maliciously and sadistically to cause harm."[37] But we cannot make the determination now based on the facts alleged and cannot accept the correctional officers' version of their justified use of force to restrain an uncooperative Mr. Wilson-Walker.

But Mr. Wilson-Walker does not plead excessive force involving Lt. Moody. He pleads only Lt. Moody directed he be disrobed. Mr. Wilson-Walker does not allege Lt. Moody knew or directed the type of conduct following the disrobing. We dismiss this claim and Lt. Moody without prejudice should Mr. Wilson-Walker adduce evidence allowing him to amend claims to specifically identify Lt. Moody's excessive force.

**B. Mr. Wilson-Walker does not plausibly plead sexual abuse/sexual assault.**

Mr. Wilson-Walker alleges one instance of a correctional officer sexually assaulted him during their April 30, 2024 interactions. Sexual abuse by correctional officers of incarcerated persons violates the Eighth Amendment if it is "objectively, sufficiently intolerable and cruel, capable of causing harm" and subjectively the correctional officer "acted maliciously and intended to cause harm without a legitimate penological purpose."[38] Our inquiry into whether sexual contact is objectively, sufficiently serious is "necessarily contextual [and] fact-specific."[39] We are instructed to consider the "scope, place, and timing of the offensive conduct" and "the details of the alleged conduct" to determine whether the alleged offensive conduct is objectively severe.[40] Objectively serious sexual contact includes "sexualized fondling, coerced sexual activity, combinations of ongoing harassment and abuse, and exchanges of sexual activity for special treatment or to avoid discipline."[41]

Mr. Wilson-Walker pleads one incident which may possibly reach an Eighth Amendment violation: Correctional Officer Paris "grabbed" Mr. Wilson-Walker's penis and "squeezed it in a sexual manner" while Sergeant Williams and a John Doe Correctional Officer attempted to move Mr. Wilson-Walker to another room or take him to the Facility's medical unit.[42] Our Court of Appeals instructs a single incident, if sufficiently serious or severe, may violate the Eighth Amendment.[43] But the incident must be objectively serious or severe.

The correctional officers argue the alleged penis grab by Correctional Officer Paris is simply brief contact with Mr. Wilson-Walker's genitals in the ordinary course of a strip search and there are no facts alleging how the alleged contact is sexual in nature other than a bald allegation Correctional Officer Paris touched him in a "sexual manner."[44] Correctional Officer Paris's conduct is pleaded as an isolated and momentary brush, like allegations dismissed by our Court of

7

Appeals in *Ricks v. Shover*. Our Court of Appeals in *Ricks* dismissed an incarcerated person's Eighth Amendment sexual abuse claim based on an allegation a Correctional Officer "rubbed his erect penis against [inmate's] buttocks through both men's clothing" during a routine morning pat-down but allowed plaintiff to amend his claim to allege facts "specifying the incident's seriousness or severity, as well as its purpose, and any other facts that would provide context."[45] Our Court of Appeals in *McIntyre v. Kellinger* found an incident in which a correctional officer dragged his hands down an inmate's buttocks and gripped and squeezed the buttocks while whispering "in a sexual manner" during a pat-down search is not objectively severe or serious to establish an Eighth Amendment violation.[46]

We do not see a distinction between the dismissed conduct in *Ricks* and *McIntyre* and Correctional Officer Paris's alleged penis grab during disciplinary steps. Mr. Wilson-Walker does not offer specifics as to the severity of Correctional Officer Paris's conduct during the pleaded context of attempting to move Mr. Wilson-Walker into another room and putting him into a suicide prevention suit. He does not allege how this grab is sexual in nature. We can also plausibly infer Correctional Officer Paris's conduct arose in the context of a penological purpose and does not sufficiently allege the subjective prong required to state an Eighth Amendment sexual abuse claim.

We dismiss Mr. Wilson-Walker's Eighth Amendment sexual abuse claim against Correctional Officer Paris. We also dismiss Mr. Wilson-Walker's claims against Sergeant Williams, Lieutenant Moody, or the John Doe and Jane Doe Correctional Officers finding no plausible allegations of sexual abuse against them.

## III. Conclusion

We grant in part the correctional officers' motion to dismiss the claims against Lt. Moody and claim of one sexual assault on April 30, 2024 arising from Correctional Officer Paris's alleged

8

grabbing of his penis during the disciplinary acts. We dismiss these claims without prejudice should Mr. Wilson-Walker develop facts in discovery allowing him to plead specifics as to Lt. Moody's excessive force or sexual assault against Correctional Officer Paris and others. Mr. Wilson-Walker may now proceed into discovery on his excessive force claims against Sergeant Williams and Correctional Officer Paris relating to their April 30, 2024 interactions with him.

---

[1] ECF 13 ¶ 5. Mr. Wilson-Walker alleges non-party Correctional Officer Baez approved his call, unlocked his cell, and told him he had fifteen to thirty minutes to complete the call but he should end the call when she returned from a break and before Sergeant Williams returned to the unit. *Id.* ¶ 4.

[2] *Id.* ¶ 6.

[3] *Id.* ¶¶ 6-7.

[4] *Id.* ¶ 7.

[5] *Id.* ¶ 9.

[6] *Id.* ¶ 10.

[7] *Id.*

[8] *Id.* ¶ 11.

[9] *Id.*

[10] *Id.* ¶ 12.

[11] *Id.* ¶ 13.

[12] *Id.*

[13] *Id.* ¶ 14.

[14] *Id.*

[15] *Id.* ¶ 15.

[16] *Id.* ¶ 16.

[17] *Id.* ¶¶ 16-17. Our understanding is a "turtle suit" is a suicide prevention vest.

[18] *Id.* ¶ 18. We assume Mr. Wilson-Walker's reference to a "PREA" complaint is the Prison Rape Elimination Act, 34 U.S.C. § 30302 *et seq.*, through with Congress sets procedures for incarcerated persons to report sexual abuse and harassment.

[19] ECF 13 ¶ 19, and "Additional Complaint" at 5.

[20] *Id.*, "Claim" at 7.

[21] ECF 8.

[22] ECF 13.

[23] ECF 19.

[24] *Schneyder v. Smith,* 653 F.3d 313, 319 (3d Cir. 2011).

[25] *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). We assumed the Commonwealth confined Mr. Wilson-Walker at the George W. Hill Correctional Facility as a pre-trial detainee when we screened Mr. Wilson-Walker's Complaint in July 2024 because Mr. Wilson-Walker did not allege his status. The correctional officers now ask us to apply an Eighth Amendment analysis allowing us to infer Mr. Wilson-Walker is not a pretrial detainee. A review of the publicly available docket of the Delaware County Court of Common Pleas confirms Mr. Wilson-Walker is not a pre-trial detainee based on his guilty plea to state charges on which Judge Pagano sentenced Mr. Wilson-Walker to a maximum term of two years' imprisonment on April 28, 2023. *Commonwealth v. Wilson-Walker*, No. CP-23-CR-4757-2022 (Del. Cnty.). The Commonwealth released Mr. Wilson-Walker on probation but it appears he violated the terms of his probation around April 30, 2024 (the date of the complained-of incident in this lawsuit) when he pro se moved for a *Gagnon* hearing (*Gagnon v. Scarpelli*, 411 U.S. 778 (1973)). Judge Brennan held a *Gagnon I* hearing on May 7, 2024. Judge Kelly ordered Mr. Wilson-Walker transferred to the Montgomery County Correctional Facility on June 20, 2024 where he remains in custody as of July 9, 2024. *See* Criminal Docket *Commonwealth v. Wilson-Walker*, No. CP-23-CR-0004757-2022 (Del. Cnty.). We will apply an Eighth Amendment analysis to the incarcerated Mr. Wilson-Walker's excessive force claim not a Fourteenth Amendment analysis applied to a pre-trial detainee.

[26] *Hudson*, 503 U.S. at 7.

[27] *Young v. Martin*, 801 F.3d 172, 180 (3d Cir. 2015) (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)).

[28] *Id.* (quoting *Hudson*, 503 U.S. at 9; *Davidson v. O'Lone*, 752 F.3d 817, 827 (3d Cir. 1984)).

[29] *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (quoting *Whitley*, 475 U.S. at 321).

10

---

[30] The Supreme Court, under Federal Rule of Civil Procedure 12(b)(6), requires Mr. Wilson-Walker plead enough facts to state a claim for relief plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). While "[t]he plausibility standard is not akin to a 'probability requirement,' it does require the pleading show 'more than a sheer possibility … a defendant has acted unlawfully.'" *Riboldi v. Warren Cnty. Dep't of Human Servs. Div. of Temp. Assistance & Soc. Servs.*, 781 F. App'x 44, 46 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678). "A pleading that merely 'tenders naked assertion[s] devoid of further factual enhancement' is insufficient." *Id.* We are "mindful of our obligation to liberally construe a pro se litigant's pleadings … particularly where the pro se litigant is imprisoned." *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (quoting *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011) and citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013) (italics omitted)). We are to "remain flexible" and "apply the relevant legal principle even when the complaint has failed to name it." *Yogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (quoting *Mala*, 704 F.3d at 244). Under Rule 8(e), "[p]leadings must be construed so as to do justice." Fed. R. Civ. P. 8(e). We are directed by our Court of Appeals this liberal standard is "even more pronounced" where, as here, a plaintiff files a complaint pro se, without assistance of counsel, to "protect pro se litigants from the inadvertent forfeiture of important rights due merely to their lack of legal training." *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) and citing *Higgs*, 655 F.3d at 339). But "pro se litigants still must allege sufficient facts in their complaints to support a claim" and "cannot flout procedural rules–they must abide by the same rules that apply to all other litigants." *Yogt*, 8 F.4th at 185 (quoting *Mala*, 704 F.3d at 245).

[31] ECF 19 at 6.

[32] *Smith v. Mensinger*, 293 F.3d 641, 648 (3d Cir. 2002).

[33] *Id.* (quoting *Brooks*, 204 F.3d at 108).

[34] *Id.* (citing *Hudson*, 503 U.S. at 9-10).

[35] ECF 13 ¶¶ 7, 11, 14-16.

[36] *Twombly*, 550 U.S. at 570.

[37] *Hudson*, 503 U.S. at 6.

[38] *Ricks v. Shover*, 891 F.3d 468, 473-75 (3d Cir. 2018).

[39] *Id.* at 478.

[40] *Id.*

[41] *Id.*

[42] ECF 13 ¶¶ 10-11. We discern no other allegations of sexual abuse or harassment. Allegations Correctional Officer Paris "touch[ed]" Mr. Wilson-Walker's "rear end" to "push" him into another room; Correctional Officers Paris and John Doe "lick[ed] their lips" and laughed at Mr. Wilson-Walker while nurses examined him; and Correctional Officer Paris "started to apply more pressure to my anal area" when attempting to put Mr. Wilson-Walker into a suicide prevention suit do not constitute sexual abuse in the pleaded context. *Id.* ¶¶ 10, 12, 16. Verbal harassment including lewd comments does not rise to an Eighth Amendment claim. *Chin v. Warfel*, No. 23-4220, 2024 WL 665536, at *4 (E.D. Pa. Feb. 15, 2024) (pretrial detainee's Fourteenth Amendment sexual abuse claim based on remark of a sexual nature did not rise to a constitutional violation and dismissed); *Picket v. Williams*, No. 23-1411, 2023 WL 3044589, at *5 (E.D. Pa. Apr. 21, 2023) (Eighth Amendment claim of sexual harassment based on officer's looking at inmate's genitals and verbal comments dismissed) (collecting cases). Alleged conduct in the context of "pushing" Mr. Wilson-Walker's "rear end" to move him and "pressure" in the "anal area" while attempting to put Mr. Wilson-Walker in a suicide prevention suit is not objectively or subjectively, as alleged, sufficient to state a sexual abuse claim at this stage.

[43] *Ricks*, 891 F.3d at 477.

[44] ECF 19 at 6-7.

[45] *Ricks*, 891 F.3d at 471, 479.

[46] 741 F. App'x 891, 893 (3d Cir. 2018). Judge Jones decided *McIntyre* on summary judgment, concluding the objected-to incident arose during a pat-down search when the incarcerated man unexpectedly left the dining hall before eating lunch, the incarcerated man did not allege the facility official intended to gratify his sexual desire or humiliate him, the officer performed the single pat-down search over the incarcerated person's clothing and did not include the genital area, and comment, even if delivered in a sexual manner, did not render the search unconstitutional. *Id.*